IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RENAI L.K.,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>      Defendant. | Case No. 1:21-cv-01117-JEH |

**Order**

Now before the Court is the Plaintiff Renai L.K.'s Motion for Summary Judgment (Doc. 14) and the Commissioner's Motion for Summary Affirmance (Doc. 16).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Renai L.K. filed an application for supplemental security income (SSI) on September 28, 2018, alleging disability beginning on December 9, 2012. Her SSI claim was denied initially on May 24, 2019 and upon reconsideration on December 24, 2019. Renai filed a request for hearing concerning her application which was held on October 1, 2020 before the Honorable David W. Thompson (ALJ). At the hearing, Renai was represented by an attorney, and Renai and a vocational expert (VE) testified. Following the hearing, Renai's claim was denied on October 30,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6) on the docket.

1

2020. Her request for review by the Appeals Council was denied on February 10, 2021, making the ALJ's Decision the final decision of the Commissioner. Renai timely filed the instant civil action seeking review of the ALJ's Decision on April 16, 2021.

## II

Renai argues the ALJ committed the following error: the ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of treating medical source James Morse, M.D., and instead inserted his own lay medical opinion.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past

work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Renai claims error on the ALJ's part at Step Four.

### A

At Step One, the ALJ determined Renai had not engaged in substantial gainful activity since September 28, 2018, the application date. AR 23. At Step Two, the ALJ determined Renai had the following severe impairments: burns; peripheral neuropathy; diabetes mellitus; essential hypertension; hyperlipidemia; obesity; and a spine disorder. *Id*. At Step Three, the ALJ determined Renai did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 25. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 416.967(c) except she is limited to frequent climbing of ramps, stairs and ladders and limited to occasional climbing of ropes and scaffolds. She is limited to frequent stooping, kneeling and crouching, and limited to occasional crawling. She is limited to frequent reaching in all directions with her right upper extremity.

AR 26. The ALJ determined that in comparing Renai's RFC with the physical and mental demands of her past relevant work as a bus driver and certified nursing assistant (CNA), Renai was able to perform that past relevant work. AR 30. The ALJ made an alternative Step Five finding that, considering Renai's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Renai could perform. AR 30-31. Thus, the ALJ concluded Renai had not been under a disability since September 28, 2018.

B

Renai's sole argument is that the ALJ insufficiently articulated his consideration of Renai's treating doctor's February 2019 physical assessment. She says the ALJ's explanation for finding Dr. Morse's opinion unpersuasive was a mere conclusory statement, and the ALJ engaged in a selective reading of the record to support his conclusion. The Commissioner contends that Renai's arguments lack merit where the State Agency physicians' discounting of Dr. Morse's opinion bolsters the ALJ's decision to do so, the ALJ reasonably concluded the available records he considered did not support the extreme limitations in Dr. Morse's opinion, and the ALJ's error, if any, was ultimately harmless.

1

Dr. Morse opined in a February 21, 2019 Physical Assessment, that Renai: would need to recline or lie down during a hypothetical eight-hour workday in excess of the typical breaks and lunch; could walk two city blocks without rest or significant pain; could sit and stand/walk a total of three hours in an eight-hour workday; would need to take unscheduled 20 to 30-minute breaks during an eight-hour workday, three to four times per day; could never lift any amount of weight in a competitive work situation; could only use her hands/fingers/arms for grasping/turning/twisting objects/fine manipulation for 10% of time during an eight-hour workday and could not reach at all; and would miss work more than four times a month as a result of her impairments and treatments. AR 1216-17. In his Decision, the ALJ acknowledged that Renai received treatment through Dr. Morse, a family practitioner. The ALJ ultimately found Dr. Morse's February 2019 opinions "not persuasive." AR 29. The ALJ noted Renai had treated with Dr. Morse since 2005 and saw him every six months. The ALJ next repeated the details of Dr. Morse's opinions and concluded:

> The opinions are not internally consistent with contemporaneous treatment or examination notes, as well as not generally supported by the evidence as a whole. Further, Dr. Morse failed to give any basis for his opinions and failed to reference any medical records in support of his opinions. Finally, the claimant testified that Dr. Morse did not perform or refer the claimant for any standardized physical functioning or psychological testing before completing the form.

*Id.*

Per 20 C.F.R. § 416.920c(a), an ALJ is required to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *See also* 20 C.F.R. § 416.920c(b)(2) (providing the factors of supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be"); 20 C.F.R. 416.920c(c)(1) (providing that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be"); 20 C.F.R. § 416.920c(c)(2) (providing the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"). Here, Renai argues that the ALJ's conclusory reasoning in evaluating Dr. Morse's opinion does not provide for meaningful review by the Court. The Court does not agree.

The ALJ specifically referred to contemporaneous treatment and examination notes. Such a reference permits the Court to review those particular records to ensure the ALJ "considered the important evidence" and to be able to trace the path of the ALJ's reasoning. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.

1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Renai emphasizes that during her musculoskeletal examination on February 21, 2019, Dr. Morse observed edema, tenderness, and deformity, he observed that Renai displayed abnormal reflex, muscle tone, and coordination, and he noted a diabetic left foot exam showed chronic neuropathy. She also cites to September 2019 and February 2020 examinations by Dr. Morse during which he observed general tenderness, and December 2019 imaging showing degenerative changes within the thoracic spine and mild degenerative changes within the right hip.

While true that January and February 2019 Progress Notes identified tenderness and other positive findings, she had normal range of motion in her neck. At her April 2019 Internal Medicine Consultative Examination, Renai was able to get on and off the examination table without a problem, there was no cyanosis, clubbing, or edema in her extremities, her posture and gait were unremarkable, she had normal muscle strength and tone, she had intact motor and sensory systems, and her grip strength and fine finger skills were normal. Renai had no muscular or bone complaints and reported no musculoskeletal symptoms at back-to-back ER visits in June 2019 at which time her physical examinations revealed no motor or sensory deficits, her strength was normal, her back was nontender, her neck was supple, and she had no edema. Earlier in his Decision, the ALJ explained that medical records since March 2019 did not demonstrate complications or exacerbations of any of Renai's conditions and, "[i]nstead, they reflect routine treatment for the impairments listed above [in the Decision, including peripheral neuropathy, diabetes mellitus, essential hypertension, hyperlipidemia, and spine disorder]." AR 28. Those records included Progress Notes by Dr. Morse and treatment notes by other medical providers dated

7

between September 2019 and February 2020 which indicated Renai had normal range of motion and normal reflexes, including at times when tenderness was present.

Given such evidence, it was logical for the ALJ to conclude that Dr. Morse's opinions of extreme limitation as to Renai's physical abilities was not consistent with contemporaneous treatment or examination notes. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions). In addition to the fact that the ALJ was not required to discuss every piece of evidence, his Decision does not reveal a selective reading of the record in any event. For instance, the ALJ explicitly noted that a diabetic exam in February 2019 confirmed neuropathy in Renai's feet (record evidence Renai highlights in her brief), and the ALJ later explained how he accounted for that neuropathy in Renai's RFC. The ALJ also noted that Renai could not squat or stand on heels and toes during her physical consultative examination. With regard to supportability, Renai does not discuss the ALJ's three specified reasons, quoted above, for rejecting Dr. Morse's opinions as supported. Significantly, what Renai chooses not to do, is to read the ALJ's Decision as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining that it is proper to read the ALJ's decision as a whole). In addition to a lack of consistency and supportability, the ALJ also emphasized the lack of record evidence in support of Dr. Morse's opinions. The ALJ articulated why the evidence of medication use, daily activities, and imaging, in addition to the treatment and examination notes of record, did not support the extent of limitation Renai complained was caused by her symptoms.[3] The Court

---

[3] Renai does not challenge the ALJ's subjective symptom evaluation.

finds the ALJ cited to substantial evidence in support of his conclusion that Dr. Morse's opinions were "not persuasive," the bulk of which Renai does not address. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (stating that a reviewing court must affirm an ALJ's decision denying a plaintiff's claims "even if reasonable minds could differ concerning whether [the claimant] is disabled" if the decision is adequately supported).

## 2

Even if the Court were to accept Renai's argument that the ALJ selectively discussed the pertinent evidence of record and failed to explain how he considered, for example, the physical consultative examiner's statements of Renai's observed decreased range of motion in her cervical and lumbar spine and in her right upper and lower extremities and her inability to squat or stand on her heels and toes, such error would be harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). At the hearing, the ALJ questioned the VE about the following hypothetical individual:

> Q    I'm going to stay at the light exertional level, but I'm going to change the postural limitations. I'd like you to assume we have an individual of the same age, education, and experience as the claimant. This individual will be limited to occasional climbing of ramps, stairs, and ladders; limited to no climbing of ropes and scaffolds; limited to occasional stooping, kneeling, crouching, and crawling; and limited to frequent reaching, in all directions, with the right upper extremity, and that's the dominant . . . .

AR 71. The VE responded that such an individual could work as a production assembler, electronics worker, and bench assembler. AR 72. These additional limitations were surely responsive to the evidence of record Renai highlights. If there was any doubt in that regard, the ALJ resolved it. The ALJ made clear in his Decision that he made an alternative finding for Step Five of the sequential evaluation process, and for it:

> the undersigned gave the claimant every benefit of the doubt, and asked the vocational expert to consider an individual with the same vocational profile and work restrictions as the claimant, but posit that she was limited to light work, with more restrictive postural limitations.

AR 31. In light of the VE's testimony, the ALJ concluded that Renai was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. *Id.*[4]

Lastly, the ALJ did not insert his own lay medical opinion in this case. Renai argues that must be so because the ALJ had no medical opinion to rely on, having found both the State Agency physicians' and Dr. Morse's opinions "not persuasive." But, of course, an ALJ need not adopt any one doctor's opinion. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians"). Also, at the ALJ hearing level, "the [ALJ] . . . is responsible for assessing [the claimant's RFC]." 20 C.F.R. § 416.946(c). The RFC, in turn, is assessed "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 416.945(a)(1). In this case, the ALJ built a logical bridge from

---

[4] The Commissioner argues that while the ALJ technically found the State Agency physicians' opinions unpersuasive, the ALJ's error, if any, was harmless because "he essentially adopted their findings with his alternative step five finding." Dft's MSJ (Doc. 16-1 at pg. 3). The Court finds it somewhat incongruous for an ALJ's Decision to be defended, at least in part, upon evidence (opinions) the ALJ specifically found "not persuasive." AR 29.

*all* of the relevant evidence to his RFC finding. Renai's limited argument does not establish that the ALJ's Decision was insufficiently supported, and it does not reveal the ALJ played doctor. *Compare Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (emphasizing why ALJs "are required to rely on expert opinions instead of determining the significance of particular medical findings themselves").

## IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 14) is DENIED, and the Defendant's Motion for Summary Affirmance (Doc. 16) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Renai L.K., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on August 22, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE